Case number 22-53O, American Federation of Government Employees, National Council of HUD Locals, Council 222, AFL-CIO versus Federal Labor Relations Authority and Susan Tsoi Brennan in her official capacity as Chairman of the Federal Labor Relations Authority Appellants. Mr. Tsoi for the appellants, Mr. Grijales for the appellee. Good morning. Good morning. Good morning, Your Honors. May it please the Court, I'm Mr. Tsoi for the FLRA. The case presented here is about LEADM jurisdiction, which this Court has repeatedly said was a very narrow basis for the District Court to review agency action, only in circumstances when there's extreme agency error and where the agency has committed ultra-virus action so plainly beyond the bounds of the statutory authority to warrant intervention by District Court under 1331. Now, this case concerns pretty much exactly the opposite, the type of case that warrants LEADM jurisdiction. In fact, in this case, the agency tried to correct an error to ensure that the entire case before it within statutory bounds. The case presented to the FLRA exceeded the statutory limits by intruding upon classification matters, which from its origin in the statute that rated FLRA specifically took away from the FLRA's jurisdiction classification matters and gave it to alternative agencies, it presented this case of classification to the FLRA. And yes, the case went on for several years, but eventually when it reached the FLRA's most recent instance, it looked at the case and saw that arbitrator acted beyond the statutory limits. And that is not in dispute before the appeal. The union did not dispute that in fact, the classification issue was part of the case, integral to the case. And therefore, the FLRA was clearly correct in correcting the arbitrator's exceeding statutory limitations. So we see this case very similar to Middleman, which in fact, this court has said cannot be an ultra-virus case because the agency took pains to limit itself to fall within the statutory limits. Where does the authority get power to alter an award? So I think it's sourced in two different areas. One is 7122, which says concerning the award, it allows the authority when an arbitration award is presented to it to issue orders necessary to concerning the award. And the award here was a culmination of several intermediate awards that occurred over the years. And so when it says concerning the award, within that, it was necessary to correct the ultra-virus actions that were void because arbitrary exceeds statutory limits. 7122 starts with subsection A and says upon review, the authority finds so-and-so that it may take such action. And then after that comes B. And the very next sentence says, if no exception is filed during the 30-day period, then the award is final and binding. So it seems like the authority has no power to do anything if no exception has been filed for 30 days. Well, you have to read 7122 along with the provision, which actually describes the powers and the extent of powers the authority was given by Congress, which was 7105. I think we have to read it in parallel and context. If you look at 7105, which is described as the powers of the authority, in H, it talks about resolving exceptions according to 7122. But then it goes on in I, it says, and any necessary and appropriate actions to administer the statute, which differentiates this from several other cases. For example, what's the point of the 30-day limit if the authority can go back and alter any award at once in the past? Well, in this situation, it's quite different from a typical situation when there's an award that comes up that resolves all the issues in the case. I think when the FLRA looks at a particular award, it looks at the entire case, which is presented to the FLRA, not necessarily single pieces of an award. Can I give you a hypothetical? What if there was one award and it said, you know, this will be implemented over the course of the next 30 years, there was no dispute for the first 29 years, and then some dispute arose about implementation. 29 years worth of actions have taken. And the authority decides, you know what, we think that that first award was invalid, so we're going to vacate the award from 29 years ago and all of the actions that we've ordered since then. Could it do that? Yes, under limited circumstances. So we're not talking about situations where it goes back and looks at merits of awards. Here we're talking about trying to impose because from the design, congressional design, it was not allowing arbitrations to reach these issues. Something like that happens all the time in institutional cases where there's an injunction outstanding. The injunction is final and binding, but for example, in school desegregation cases, in prison litigation cases, it keeps getting adjusted and adjusted and adjusted. Sometimes broader, sometimes narrower, and it may be over 20 years or 30 years. And so the idea that it's final and binding means it's not final and binding on the court that issued the injunction. It's final and binding on the people that are subject to the injunction. And so it can always be modified and actually can, you know, if there's an appeal at any point during There's a Supreme Court case that details all this. I won't bother with it. It's called RUFO, R-U-F-O. I don't have the citation on it handy, but the analogy to me is right on point. Exactly, Judge Randolph. In fact, there's a case from 1983 from this court, Office of Professional Workers versus WMATA, which makes the exact same point, which it says in a similar situation, it read a statute with final and binding award, and it said that has that all that has to do with is the party's compliance while judicial review is ongoing. And so it is sometimes unjust. It may be prejudicial. And Christensen versus Colt, the Supreme Court says enforcing jurisdictional boundaries sometimes will cause prejudice, but that's what the authority is bound to do under the congressional design. And this is particularly clear when we talk about judicial preclusion, which is another basis for why Needham jurisdiction cannot apply here. What if there was a habeas statute that looked different than current AEDPA, and it said once a conviction is final, the prisoner has one year to file a habeas petition. And if the prisoner doesn't file the habeas petition, that conviction cannot be vacated. Period. Full stop. No exceptions. You think that a court could come in 30 years later and vacate the conviction? Well, first of all, the habeas petition, I think it's a petition for within the, it's a recognized petition to the courts, right, for releasing of prisoners. Here, we're talking about arbitration decisions that are final and binding that are before judicial review. So in this circumstance, when we look at the office and professional workers case, the court was pretty clear that the congressional history behind final and binding language in private parties means that it is applicable to the parties themselves to prevent strikes and lockouts to maintain labor peace while the judicial review is ongoing. And under the congressional design, FLRA was the first step in that judicial review process. And so it's what this court said in Scobie was quite clear that Congress wanted FLRA to have full sort of authority in non, in not an unfair labor practice case, but a regular arbitration case as presented here, full authority to decide those cases without further judicial review. And that is why the second prong, in addition to the final and binding language, not being a clear mandatory requirement, the second prong also applies in that this court in Wagner, Loy, Scobie repeatedly has said that there is no jurisdiction of this, of the federal courts. Don't forget custom service. Custom service, yes. Yes, there's repeated sort of language, including Scobie saying it's a plain language and Loy, Judge Randolph's opinion in Loy basically saying there is no judicial review of these arbitration awards. And yes. Can I get your thoughts on this theory of the case? The authority does not have the power to vacate the, I think it was a 2012 award. The award that preceded summary number one. Okay. But if today's authority believes that that 2012 award was valid, there was no jurisdiction, then it can treat it as a nullity. So the authority going forward can issue decisions that, that treat it as a nullity. But what it can't do is it can't go back in time and vacate that 2012 award. So the parties are bound by the 2012 award, except to the extent that future orders from the authority tell them to do things in conflict with the award. And maybe future orders from the authority could tell them to do things in conflict with the award because in the eyes of the authority, the award was issued without jurisdiction. How does that sound? So that, that is sort of, that is suggesting the case in Nicholson, which it's, let's say FLRA already has the authority to not enforce awards that it views were are nullities. So yes, we agree that that is a possibility, but it's, it seems good enough. Well, for a direct review to prevent having the parties to again, having to go in the court and it's favorable to have a direct review situation when there's a case right before the FLRA to enact the same effect instead of waiting for the parties then to enforce the award and then telling them. We never get to that if judicial review is precluded. Yes. And that's what you were talking about. Yes. So there's essentially three prongs to lead them. I think the plaintiff doesn't satisfy the burden on any of the three prongs. So if you don't think it's favorable on one prong, I think the other two prongs do, do also prevent. So I think my time is up. Thank you. We'll give you some time on rebuttal. Okay. Thank you. May it please the court, Andy Grajales for the union. The problem with what the FLRA is asserting here is it has absolutely no limiting principle. They can act prospective, but nothing in their delegated powers gives them the power to rewrite history. Are you saying that the theory I floated you would be, you would be on board with? And I, are you, are you saying that the theory I floated in my last question to opposing counsel is an approach to the case that you would be on board with and just be clear what I think it would look like. We would rule for you in this court. We would reverse the district courts. We would, no, we would affirm, we would rule for you in this court. We would affirm the district courts granting of your summary judgment motion because what you asked for was for the district court to vacate the authorities vacateur of the previous awards. Correct. So, so far it sounds like you're, we asked for a vacater of HUD 8 and HUD 9. So far it sounds like you're winning, but, but, and, and, and that would be nice for you because maybe it would mean that outstanding obligate, maybe it would mean that satisfied obligations. Well, it would vindicate a right that the union has to binding arbitration. So let's not forget that this issue, the issue here is that the authority already decided the legal question of whether the grievance concern classification found that it did not. Before you get off track, let me tell you what I think you would not maybe like about this approach is that the authority here would not be obligated to enforce outstanding obligations because those obligations would flow from an award that lacks jurisdiction. So we would argue that the correct approach, if the court were to side with us would be to affirm the district court vacate HUD 8 and HUD 9, but remain to the authority for reconsideration of the 10th summary in light of any findings that this court would make. And so in answer to your question, it's a hypothetical of whether some future remedy would violate some other portion of the statute, but that would only apply to the exceptions that were in front of the authority. They would have to be in front of the authority. And the issue here is twofold. The authority had already made a legal determination that the grievance did not concern classification. So the injunction analogy that your honor raised isn't quite right with due respect because it's as if in Brown v. Board of Education, the Supreme Court made a legal conclusion of a constitutional violation. That legal conclusion remained the same and it bound those parties certainly, but whether implementation in the future would change depended on whether or not there was a live case in controversy. It's not just Brown. It's a whole series of cases. Let me ask you something. You agree, do you not, that under section, was it 7123, that our court would not have a jurisdiction if you filed your action in our court? In this court, lead them has to proceed in addition. No, I'm not. If you filed your action for judicial review of the FRA arbitration decision in our court, we wouldn't have jurisdiction. That would be the premise of the case and that's why we filed district court to be clear. The answer, wait a minute. The answer is yes, we would not have jurisdiction. If it were filed as an original matter in this court, that's correct. If we don't have jurisdiction and all the cases that the counsel for the FRA cited, we don't have jurisdiction. Judicial review is precluded. Then how can it be that we have jurisdiction to decide this case? Because in this case, we have to conduct judicial review of the FRA decision and Congress told us we can't do that. Your Honor, it's because it's apples and oranges. The cases that all of the cases that they cite to are inapposite. To begin with, this court decided in Griffith that lead them review is available for this purpose when a party is bringing a challenge to a violation so severe that the authority has arrogated to itself a power that the statute does not give it. That case, which is the case here, belongs in the district court. To review an arbitration decision that you've brought to us now, that's brought to us now on appeal. Not at all, Your Honor. That situation did not exist in lead them. In lead them, there was no bar on appellate review, no bar of judicial review on appeal. There is here. The system that's being set up is that we don't have jurisdiction to decide this case, but the district court does. That's basically what you're arguing here. That's what this court has already decided in Griffith at 490 of that opinion. That's exactly what Griffith says. And Griffith is not dicta. This court, when it makes a finding, is not speaking in terms of dicta. It's speaking in terms of a finding. And we know that because in the very same sentence, this court says we find that lead him leaves the statute leaves the door ajar for a lead him ultra virus claim. The court then goes on in Griffith to say, but they haven't met the standard in that particular case. Griffith under 71 23. Yes, Griffith is under this statute. So Griffith controls the question of whether or not he is available at all. And in any event, if you look at 71 23, preclusion is clearly implied. It's not expressed when I agreed with you earlier. That's because we're talking about run of the mill cases that don't rise to the level that jurisdictional dimension. Do you realize that the there's a bar in the Administrative Procedure Act under 701, and it says that if a statute precludes judicial review, the A. P. A. Doesn't apply. You're familiar with that. I'm sure. Right. Certain. Yeah. Do you realize that the original bill said if a statute does not expressly preclude judicial review, then the A. P. A. Does not apply. And the and the word expressly was excised from the statute. And the reason for that is that judicial decisions can can determine whether there's a preclusion of judicial review, and we have half a dozen of them that hold just that with respect to analogous analogies to this case. Again, you're we don't believe that the court has ever held that statute. This court is consistently held that lead him is available. It is looked very cautiously and hard at particular claims, and we invite the court to do that here because we believe we meet the standard, but lead him is certainly available. I believe I may be over my time. I would just like to close with if this was a power that the statute gave them. I have a question along the lines of your answers to Judge Randolph. We lead them, and the way we've interpreted as a court distinguishes between express and implied jurisdiction strip or preclusion. And I mean, what is the difference between express and implied? The difference is clear. The difference is if you look at the court case, it says there will be no judicial review. The Fiscal Responsibility Act of 2023 says no determination, action, et cetera, shall be subject to judicial review. That's express illusion. There's none of that language here and kind of action and omission, and that line is always pretty blurry. But that's almost always phrase an omission as an action. But if we go back and we think about the considerations that underpin lead them, that's a real distinction with a difference because agencies ab initio are preachers of delegated authority. And so that's what lead them is saying is there must be review when an agency so violates its statute, where its violation is so severe that it takes into itself a power it doesn't have. It arrogates power it doesn't have. There must be review. And that review proceeds in the district court. And the FLRA doesn't have that power. Their argument with respect to 7122A, they read the word concerning, they divorce it from the rest of the subsection. And in 7105, that section begins with a limitation. That can't be a plenary grant of power to the authority. It can't be because it begins with a limitation and that limitation is subject in accordance with this chapter and even the specific subsection they rely on that gives the authority the power to take necessary and appropriate or proper and appropriate actions. It can't be appropriate if what they do violates another section of the statute. So the powers that they claim they have don't give them the power that they sought to exercise in this case. And again, the local 446 case, all of those cases that they rely on are totally an opposite. Local 446 involved a separate statute and it was a UOP and it actually the determination by the undersecretary of the VA in that case happened much later in time and that's what led to that decision. And do you agree with your friend on the other side that the arbitrator's decision was ultra virus to the extent that it concerns classification? No, and I also point out that's not a concession we make. We don't believe that's a fair reading of our brief, but also it's not a in the union's response to the authority's amended statement of facts. We say that the grievance did not involve classification, so that's not a concession we make. Why doesn't it? Because it didn't, well, I mean if we go, it's a promotion grievance about whether or not individuals were denied promotion potential into previously classified position and that's why. And that's what the authority found in HUD too. They resolved that and the authority has been reviewing the remedy. It's not actually a fair construction to say the authority never reviewed the remedy. HUD 3, HUD 4, HUD 6, those are authority decisions, final and binding authority decisions, where the authority upheld it. And in HUD 3, where the authority says the agency below HUD waived its defenses or its arguments on that, how that occurred was in HUD 2. It was the FLRA that remanded to the parties or resubmission to the arbitrator absent settlement. That's all that the union did. They didn't settle. They followed the authority's order. So that's where that power came. So no, we don't, we don't agree. How do you interpret the following language from opinions of our court? We have recognized an arbitrator's award is absolutely immune from judicial review. Or in any event, the authority is the final stop. Or the service here committed a, or once the authority determines that the service has not committed an unfair labor practice, that's the end of the line. Again, Your Honor, we would argue that's apples and oranges. Certainly, the court was wrong in stating it that way. No, it's what was under review that is different from what was under review here. Let's recall, we're not, actually those cases help us because what we are arguing promotes the finality of arbitration awards, which this court has said in a variety of cases is what the statute intended. We're trying to get the benefit of the binding arbitration, the right that the statute gives us, that the authority to the way. Griffith was a due process case, wasn't it? No, Griffith had a variety of claims in it. There was a statutory claim. That was the Liedem claim that was reviewed, but ultimately rejected. It was a due process claim. That's what the court reviewed after going through Liedem. It was a constitutional claim. There were multiple claims in Griffith, but in closing, if this was a power that the authority had to go back and rewrite history, to unring a bell that's already been rung, we would have seen some evidence of that in their last close to 50 years of decisions, and it's not there because they don't have that. Thank you. We ask for affirmance. Scott, we are opposing counsel left off. Has the authority ever done this? So, the authority has in Nicholson is probably the closest in which we've said that there is no longer final binding. You're trying to enforce a void award that went outside this jurisdiction. Did Nicholson, did the authority in Nicholson purport to vacate the original award? They didn't use the word vacature because at that point it was an enforcement action already, so it was in a different procedural posture, but I would like to go back. Maybe another way of putting it is, did it attempt to reverse satisfied obligations? I think what it did was exactly what your Honor said, was treat it as a nullity, but I think you have to go back and look at 7122 as a matter of statutory interpretation. We could affirm the district court here and still leave open the possibility that you, the authority, could treat the 2012 award and summaries one through nine as nullities. We could leave open that possibility. We can leave open that possibility, but I think reading 7122 closely I think will allow for direct review of these, and let me just point out that it says recommendations too, and it also allows FRA to remand back to the arbitrator, so it seems like it doesn't make sense when you can remand and make recommendations. You can't, in subsequent authority decisions, when this case comes up again, to go back and vacate awards that went outside the bounds of those recommendations and remands, and it happened here. I want to ask you a clarification. If you didn't, if the FRA did not vacate the other than summary 10 or whatever, didn't, then how would the union enforce the arbitrator's previous decisions? Right, we believe it's completely, it'll be almost impossible because they're all accumulation, they're all related to each other. They would insist on compliance by HUD. HUD would refuse because the orders were nullities. Then the union would file an unfair labor practice charge, right, and the precedent is that they didn't have jurisdiction, the arbitrator didn't have jurisdiction, so they would lose. Yeah, so I mean it goes back to a simple principle that people who act outside in ultra-virus ways, like the arbitrator did in these previous summaries, their decisions are void, not voidable, so there were nullities from the beginning, and so it's hard to allow just for the enforcement action, I think in a direct review. It doesn't mean, I think makes a lot of sense, doesn't what Judge Randolph suggests, is you might lose the battle in terms of whether we affirm the district court, but you can still win the war. You can still refuse to enforce things you think ought not be enforced, and at the end of the day, frantically, even if we affirm the district court, you can still get your way. I understand, for this case, yes, but I want to preserve the ability to correct remand arbitrations, remand arbitrations that are and can vacate awards when arbitrators went off the rails after remand, for example, but I just want to make one last point in conclusion that Griffith, it was about a constitutional claim. I think the operative and governing standard should be M-Corp, which is significantly different from the Griffith standard, which was issued before the M-Corp Supreme Court decision. Thank you. Thank you. We'll take the case under advisement.
judges: Wilkins, Walker, Randolph